# United States District Court
## Middle District Of Florida
### Orlando Division

RICHARD JAY DEMPSEY,

    Plaintiff,

v.            Case No:   6:21-cv-1763-PGB-LHP

JOHN VAUGHN,

    Defendant

---

## Report and Recommendation

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**   **MOTION FOR FINAL SUMMARY JUDGMENT BY DEFENDANT JOHN VAUGHN (Doc. No. 77)**
>
> **FILED:**   **June 1, 2023**
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I. PROCEDURAL HISTORY

On October 21, 2021, Plaintiff Richard Jay Dempsey, appearing *pro se*, filed the above-styled case against Defendants Brevard County, Florida ("the County") and John Vaughn ("Vaughn"), asserting claims under 42 U.S.C. § 1983 related to

Plaintiff's arrest by Vaughn on April 8, 2019.   Doc. No. 1.   Plaintiff appeared to allege claims for false arrest without probable cause, false imprisonment, deliberate indifference in violation of the Fourth, Fifth, and Fourteenth Amendments, assault and battery, malicious prosecution intentional infliction of emotional distress, invasion of privacy, gross negligence, and negligent hiring, retention, and supervision.   *Id.*   On April 8, 2022, the Court granted in part Defendants' motion to dismiss, dismissed the complaint as a shotgun pleading, and provided Plaintiff leave to amend.   Doc. No. 38; *see also* Doc. Nos. 7, 32.

Plaintiff timely filed an amended complaint, which added Brevard County Sheriff, Wayne Ivey, as a Defendant.   Doc. No. 43; *see also* Doc. Nos. 40, 42.   The amended complaint appeared to assert claims for declaratory judgment relating to a section of the Brevard County Charter, false arrest/unlawful detention, malicious prosecution, excessive force, assault and battery, instituting criminal charges without probable cause, deliberate indifference, and failure to adequately train deputies.   Doc. No. 43.   Defendants moved to dismiss, Doc. Nos. 46, 51, and on November 15, 2022, the Court granted in part and denied in part the motions, dismissed the amended complaint without prejudice as a shotgun pleading, and afforded Plaintiff one final opportunity to file a second amended complaint that complied with the pleading requirements of Federal Rules of Civil Procedure 8 and 10.   Doc. No. 57, *see also* Doc. No. 54.

On November 28, 2022, Plaintiff filed his second amended complaint, which is now the operative pleading.   Doc. No. 58.   In the second amended complaint, Plaintiff alleged a claim for declaratory relief, in which he appeared to ask the Court to find section 4.2.2 of the Brevard County Charter unconstitutional.   *Id.*, at 1-4. Plaintiff thereafter asserted three claims based on his allegedly unlawful arrest for resisting an officer without violence and disorderly conduct on April 8, 2019:   (1) a 42 U.S.C. § 1983 claim against Vaughn for filing a probable cause affidavit containing false statements ("first cause of action"); (2) a battery claim against Vaughn for kneeling on Plaintiff's handcuffed hands in the back of the police car while in transport to jail ("second cause of action"); and (3) a 42 U.S.C. § 1983 claim against Sheriff Ivey in both his official and individual capacities for failure to sanction or discipline Vaughn for filing a false affidavit and committing a battery ("third cause of action").   *Id.* at 5–9.

Defendants again moved to dismiss.   Doc. No. 61.   On April 25, 2023, the Court granted in part and denied in part Defendants' motion.   Doc. No. 73; *see also* Doc. No. 70.   Specifically, the Court dismissed without leave to replead Plaintiff's claims for declaratory relief relating to the Brevard County Charter, his claims of assault and battery against Vaughn ("second cause of action"), and all of Plaintiff's claims against Sheriff Ivey ("third cause of action").   Doc. No. 73, at 11.   However, Plaintiff's claim for false arrest under 42 U.S.C. § 1983 against Vaughn, based on

allegations that Vaughn made false statements in his probable cause affidavit, (*see* Doc. No. 58, at 5-6, "first cause of action"), was permitted to go forward, and is the only claim that remains pending in this case.   *Id.*

Discovery closed on May 1, 2023, *see* Doc. No. 68, and on June 1, 2023, Vaughn timely filed the present motion for summary judgment.   Doc. No. 77.   Plaintiff has filed a response in opposition, and Vaughn an authorized reply.   Doc. Nos. 82, 86. The motion has been referred to the undersigned for consideration and the issuance of a report and recommendation.   *See* Doc. No. 4.   With the motion fully briefed, and upon consideration of the parties' filings and evidentiary submissions, the undersigned will respectfully recommend that the motion for summary judgment be granted.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party may move for summary judgment on any claims or defenses, or on the part of any claims or defenses.   Fed. R. Civ. P. 56(a).   A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   *Id.*   The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations   .   .   ., admissions, interrogatory answers, or other

materials" to support its position that it is entitled to summary judgment.   Fed. R. Civ. P. 56(c)(1)(A).   "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists."   *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006); *see also Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990) (stating that the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial").   As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."   Fed. R. Civ. P. 56(e)(3).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).   In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor.   *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).   However, "[a] mere 'scintilla' of evidence supporting the opposing party's position

will not suffice; there must be enough of a showing that the jury could reasonably find for that party."   *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."   *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   However, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."   *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Although courts show leniency to *pro se* litigants, courts "will not serve as de facto counsel or 'rewrite an otherwise deficient pleading in order to sustain an action.'" *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) (quoting *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).[1]   *Pro se* litigants are still "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), *cert. denied*, 493 U.S. 863 (1989).

---

[1] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."   *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1354 n.7 (11th Cir. 2007).

## III.    UNDISPUTED MATERIAL FACTS

The following facts are taken in the light most favorable to Plaintiff.[2]

Plaintiff Richard Jay Dempsey is 77 years old, and currently resides at 914 Barefoot Boulevard, Barefoot Bay, 32976, located in Brevard County, Florida. Deposition of Richard Jay Dempsey ("Dempsey Depo."), Doc. No. 81, at 12-13. Defendant John Vaughn is employed by the Brevard County Sheriff's Office.    Doc. No. 79, ¶ 2.   At the time of Plaintiff's arrest, Vaughn was a deputy sheriff, and he is currently an agent with the Sheriff's Office.    *Id.*

On the date of Plaintiff's arrest, April 8, 2019, Plaintiff ate lunch between 2:30 and 3:30 p.m., and along with his sandwiches, he consumed an oil-can sized Fosters beer.   Dempsey Depo., at 34.   At some point between his lunch and his arrest, which took place between 5:00 and 6:00 p.m., Plaintiff rode his bicycle to the Winn-Dixie grocery store.   *Id.*, at 34, 38.   On his way home, Plaintiff was riding on the pedway, heading west.   *Id.* at 34, 38, 41-42.   At the same time, Elaine Roughton was driving her golf cart on the pedway heading east, with her husband Thomas Roughton as passenger.   *Id.*, at 34-36. 38.   A verbal altercation occurred between Plaintiff and Mr. Roughton over the driving of the golf cart on the pedway, which

---

[2] The parties have been unable to stipulate to agreed material facts as required by the Case Management and Scheduling Order.   *See* Doc. No. 19, at 8; Doc. No. 68, at 7-8; Doc. No. 77, at 2-3; Doc. No. 78; Doc. No. 82, at 1-2.   Accordingly, the undersigned has reviewed the parties' evidentiary submissions and the record in this case, and determined which material facts are undisputed, and which remain in dispute.

escalated into a physical altercation.   Plaintiff lost his groceries, rammed his bicycle into the golf cart, and Mr. Roughton got out and grabbed Plaintiff, while Mrs. Roughton called for law enforcement.   *Id.*, at 34-36, 38.

On April 8, 2019, Vaughn was dispatched to 731 Barefoot Boulevard to investigate a report that a white male on a bicycle rammed his bicycle into a golf cart and was "cussing" at the reporting party, who also thought the white male was intoxicated.   Deposition of John Vaughn ("Vaughn Depo."), Doc. No. 80, at 10, 19-20, 42; *see also* Doc. No. 79-3.   Vaughn did not park his vehicle at 731 Barefoot Boulevard, but parked in close proximity thereto.   Vaughn Depo., at 14-15, 31, 44. By the time Vaughn arrived at the scene, the altercation between Plaintiff and the Roughtons had concluded – Vaughn did not witness any portion of that incident. *Id.*, at 12, 13, 43, 53.   When Vaughn exited his patrol car, he observed the Roughtons to his left, sitting on their golf cart, and Plaintiff was to Vaughn's right, standing in the driveway of a neighbors' house talking to them.[3]   *Id.*, at 10-11, 13, 29-30.

Vaughn walked over to the Roughtons and interviewed them first.   *Id.*, at 15. The Roughtons confirmed that a verbal and physical altercation took place between them and Plaintiff, with Plaintiff yelling obscenities at the Roughtons relating to their driving of the golf cart on the pedway, and that Plaintiff not only rammed his

---

[3]   The neighbors were later identified as Paul Curtis and his wife.   *See* Doc. No. 85.

bicycle into the golf cart, but also hit Mr. Roughton in the leg several times with the bicycle, causing an abrasion and bruising, which Vaughn observed.  *Id.*, *see also* Doc. No. 79-2, at 3.   The Roughtons also reiterated their belief that Plaintiff was intoxicated, due to the smell of alcohol emitting from his person and his demeanor. Doc. No. 79-2, at 3.

After concluding his interview with the Roughtons, Vaughn walked over to Plaintiff, who was still standing in the neighbors' driveway, in an attempt to obtain Plaintiff's version of events.   Vaughn Depo., at 15, 24.   However, Vaughn claimed that Plaintiff was belligerent, argumentative, refused to provide any statements, and told Vaughn that he was not going to cooperate.  *Id.*, at 24, 32-33, 67.   Vaughn also requested Plaintiff walk to his patrol car in order to further separate Plaintiff and the Roughtons, to prevent further escalation, to maintain scene safety, and to interview Plaintiff without interruption, but Plaintiff refused.  *Id.*, at 33, 36-38, 45-46; *see also* Doc. No. 79-2, at 3.[4]   Vaughn warned Plaintiff that if he did not obey Vaughn's lawful instructions, Plaintiff could be arrested for resisting/obstructing the investigation, but Plaintiff refused to comply and continued to be argumentative and belligerent to Vaughn.   Doc. No. 79-2, at 3.

---

[4] While not evidence, in his opposition brief it appears that Plaintiff admits his refusal to comply with Vaughn's requests.  *See* Doc. No. 82, at 16 ("DEMPSEY had the right to remai[ning] by the Curtisses on their land and not go to the deputy when he called from 50ft down their driveway on the pedway to come to him so he could investigate.").

Vaughn then detained Plaintiff, escorted him to Vaughn's patrol car, searched Plaintiff, and then handcuffed and secured Plaintiff in Vaughn's vehicle. *Id.*, at 4; Vaughn Depo., at 73.   While Vaughn was conducting his search, Plaintiff objected verbally and began to push back on Vaughn in an attempt to stop him. Doc. No. 79-2, at 4.   Vaughn warned Plaintiff to stop several times.   *Id.* According to Vaughn, it was obvious that Plaintiff was intoxicated and an odor of an alcoholic beverage was definitely present on Plaintiff's person, he did not appear to be in control of his normal faculties, and Vaughn believed Plaintiff was causing a disturbance with his belligerent and argumentative behavior.   Vaughn Depo., at 34-36, 54-55; Doc. No. 79-2, at 4.

After securing Plaintiff, Vaughn completed his investigation, and the Roughtons stated they did not wish to press charges.   Doc. No. 79-2, at 4.   When Vaughn attempted to inform Plaintiff of this fact, Plaintiff continued to be belligerent, argumentative, and uncooperative.   *Id.*   Vaughn also became concerned that due to Plaintiff's intoxicated state, if he released Plaintiff he would continue to be disorderly and continue to create a public disturbance.   *Id.*   Thus, Vaughn arrested Plaintiff and transported him to the Brevard County Jail for booking.   *Id.*; *see also* Vaughn Depo., at 45-47.   On the drive to the Brevard County Jail, Plaintiff complained about the handcuffs, so Vaughn pulled over to check them

for fitment.   *Id.*, at 73; *see also* Doc. No. 79-3.   The handcuffs appeared to be fine, and Vaughn resumed the drive.   Vaughn Depo., at 73-74.

After transporting Plaintiff to the Brevard County Jail for processing, Vaughn prepared a probable cause affidavit for Plaintiff's arrest.   Doc. No. 79-1.   The affidavit lists the charges against Plaintiff as "Disorderly Intox – Miscellaneous," in violation of Florida Statute § 856.011, and "Resist Officer WO Viol," in violation of Florida Statute § 843.02.   *Id.*, at 1.   The narrative from the probable cause affidavit states as follows in its entirety:

> On this date I responded to 731 Barefoot Blvd in reference to a Disturbance.   Upon arrival contact was made with Mr. Richard Jay Dempsey.   Mr. Dempsey was in a dispute with a resident in a golf cart that turned physical.   Mr. Dempsey took his bicycle and pushed it into the leg of the resident two times causing a minor injury.   As I began to investigate this incident, which included a Battery, I attempted to separate the parties and start interviews.   Mr. Dempsey refused to obey my lawful order to move away from the other party involved and speak with me.

> I asked Mr. Dempsey multiple times move with me to an area near my vehicle however he still refused.   Mr. Dempsey became belligerent and began to yell about the other involved party and their golf cart usage causing a public disturbance.   Mr. Dempsey refused to further cooperate and continued yelling.

> It should be known during this investigation Mr. Dempsey had the strong order of an alcoholic beverage emitting from his person. His words were slurred and he did not appear to be in control of his normal faculties.

> It should also be noted the victim of the alleged Battery declined to prosecute and no charges were filed.

Mr. Dempsey was arrested and charged with Resisting and Officer without Violence and Disorderly Conduct.   Mr. Dempsey was turned over to the Brevard County Jail where he was held on $1,000.00 bond.

*Id.*, at 1-2.[5]

For his part, Plaintiff has submitted three affidavits in an attempt to dispute the material facts of this case.[6]   First, Plaintiff has submitted his own affidavit, in which he avers that he was not located at 731 Barefoot Boulevard at the time of his arrest, and therefore could not have engaged in any of the actions Vaughn accuses him of in the probable cause arrest affidavit.   Doc. No. 83, ¶¶ 4-10.   Plaintiff

---

[5] The following day, April 9, 2019, Vaughn prepared a case report, which provided a more detailed narrative about Plaintiff's arrest.   Doc. No. 79-2.   The undersigned has considered this case report under the public records and reports exception to the hearsay rule, and the statements the undersigned has considered were based on Vaughn's own observations and knowledge.   Fed. R. Evid. 803(8); *see also United Tech. Corp. v. Mazer*, 556 F. 3d 1260, 1278 (11th Cir. 2009) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not.") (citations omitted).   Plaintiff has not objected to the admissibility of this report.

[6] Plaintiff has also attached to his opposition a copy of Vaughn's answer and affirmative defenses to the amended complaint, and a copy of Vaughn's responses to Plaintiff's First Set of Interrogatories.   Doc. No. 82, at 18-29.   The answer does not provide any additional evidence, and the interrogatory responses in large part relate to Vaughn's employment history with the Sheriff's Office, and re-confirm that Vaughn did not arrest Plaintiff for any violations of code ordinances relating to the use of golf carts.   *Id.* Plaintiff has also submitted a copy of the Information in his case, his amended motion to quash same, the order of *nolle prosequi*, some photographs of the Barefoot Boulevard area, and several photocopied pages of what appears to be a "Health Insurance Marketplace" brochure.   *Id.*, at 30-36; Doc. No. 82-1.   The undersigned has considered all of this evidence, to the extent relevant and admissible.

further avers that the charges brought against him were ultimately *nolle prossed*. *Id.*, ¶ 13.

Second, Plaintiff has submitted the affidavit of Frederick Hinkson. Doc. No. 84. Mr. Hinkson resides at 724 Barefoot Boulevard, Barefoot Bay, Florida 32976. *Id.*, at 1. He averred that the Roughtons were violating Brevard County law when they drove the golf cart on the pedway, and that "[t]here was some kind of incident with them and [Plaintiff]." *Id.* Mr. Hinkson then observed Plaintiff walk his bike, stop at a neighbor's house, and walk up the driveway to talk with Mr. Curtis. *Id.* Mr. Hinkson averred that at a later point a sheriff's deputy pulled up and parked, and that Mr. Hinkson "never saw the deputy, [Plaintiff] or the other people together." *Id.* Mr. Hinkson further averred that he read Vaughn's arrest affidavit and that Vaughn was not truthful in his statements, specifically that Vaughn never attempted to separate the parties and that Plaintiff never refused to obey any lawful order to move away and speak with Vaughn. *Id.* Mr. Hinkson also averred that Plaintiff did not appear intoxicated. *Id.* It is unclear from the affidavit how far away Mr. Hinkson was from the events in question.

The third and final affidavit is from Paul Curtis. Doc. No. 85. Mr. Curtis resides at 733 Barefoot Boulevard, Barefoot Bay, Florida 32976, and is friends and neighbors with Plaintiff. Doc. No. 85, ¶¶ 1, 3. Mr. Curtis avers that at approximately 6:00 p.m. on April 8, 2019, he and his wife were standing in their

driveway talking with Plaintiff.  *Id.*, ¶ 2.  Mr. Curtis observed a Brevard County deputy car arrive and park on the pedway in front of the house next door on the west side of Mr. Curtis' home.  *Id.*, ¶ 4.  The deputy walked up to the driveway where Mr. Curtis, his wife, and Plaintiff were standing, and took Plaintiff down the driveway to the deputy's vehicle.  *Id.*, ¶¶ 5-6.  Mr. Curtis observed the deputy and Plaintiff talking for a short while, and then the deputy suddenly grabbed Plaintiff from behind, handcuffed him, and took Plaintiff away in the patrol car.  *Id.*, ¶¶ 7-8.  Mr. Curtis averred that Plaintiff was not drinking nor disorderly, there was no endangerment to Mr. Curtis, his wife, or his property, and that Plaintiff was polite to the deputy and never resisted arrest.  *Id.*, ¶¶ 10-12.[7]

On April 26, 2019, Plaintiff was charged by Information with one count of resisting an officer without violence, in violation of Florida Statute § 843.02, and one count of disorderly conduct, specifically in relation to "brawling and fighting interfering with traffic," in violation of Florida Statute § 877.03.  *State of Florida v. Richard Jay Dempsey*, Case No. 052019MM023551AXXXXX, Doc. No. 82, at 30-31.

---

[7] Plaintiff has submitted two versions of the affidavits for both Mr. Hinkson and Mr. Curtis.  *See* Doc. Nos. 84-85.  The undersigned has only considered the first version, which is properly sworn and notarized.  Doc. No. 84, at 1-2; Doc. No. 85, at 1-2.  The second versions are neither sworn nor notarized, and do not comply with the requirements of 28 U.S.C. § 1746, therefore they are not admissible and have not been considered.  *See, e.g.*, *Hughes v. Dale Cty. Med. Ctr.*, No. 1:06CV595-SRW, 2008 WL 1757768, at *1 (M.D. Ala. Apr. 16, 2008); *Life Ins. Co. of N. Am. v. Foster*, No. CA 09-0831-CG-C, 2010 WL 1873102, at *4, n. 5 (S.D. Ala. Mar. 31, 2010), *report and recommendation adopted*, No. CA 09-0831-CG-C, 2010 WL 1873097 (S.D. Ala. May 5, 2010).

On May 14, 2019, both charges were resolved by way of a *Nolle Prosequi*.   Doc. No. 82, at 36; *see also* Vaughn Depo., at 100.[8]

## IV.   ANALYSIS

The sole remaining claim in this case is a 42 U.S.C. § 1983 claim that Vaughn falsely arrested Plaintiff in violation of his Fourth Amendment rights.   Doc. No. 58, at 5-6.   And in support of that claim, Plaintiff points to various statements in Vaughn's probable cause affidavit, which Plaintiff contends are false.   *Id.*   Vaughn seeks summary judgment in his favor, arguing that he is entitled to qualified immunity.   Doc. No. 77.

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right."   *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)).   *See also Pearson v. Callahan*, 555 U.S. 223, 231

---

[8] Vaughn has submitted evidence of Plaintiff's lengthy history of encounters with law enforcement, many of which involved alcohol and resulted in arrests and/or convictions.   *See, e.g.,* Dempsey Depo., at 14-33, and Exhibits D-2 through D-4; Doc. No. 77, at 7-8.   However, there is no evidence before the Court that Vaughn was aware of Plaintiff's history at the time of his arrest on April 8, 2019, nor does Vaughn explain how this history relates to the question of whether Vaughn had probable cause and/or arguable probable cause to arrest Plaintiff.   Accordingly, the undersigned does not find this information relevant to the issues presented at summary judgment and gives this evidence no further consideration.

(2009).   An official who asserts an entitlement to qualified immunity must first establish that he or she was acting within the scope of his or her discretionary authority when the allegedly wrongful act occurred.   *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1319 (11th Cir. 2016); *see also Moore v. Pederson*, 806 F.3d 1036, 1042 (11th Cir. 2015) ("[T]he term 'discretionary authority' include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." (citation and internal quotation marks omitted)).   Here, it is undisputed that Vaughn was acting within his discretionary authority as a Brevard County Sheriff's Deputy both when he arrested Plaintiff, and when he drafted and executed the probable cause affidavit.

Accordingly, the burden now shifts to Plaintiff to show that:   (1) Vaughn violated his constitutional or statutory rights; and (2) those rights were clearly established at the time Vaughn acted.   *See Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015).   "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."   *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation and internal quotation marks omitted).   "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."   *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).   Put simply, qualified immunity protects "all but the

plainly incompetent or those who knowingly violate the law."   *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

   A.   *The Law Was Clearly Established*

   The undersigned starts with the second prong first.   At the time of Plaintiff's arrest in April 2019, the law was clearly established that "[a] warrantless arrest without probable cause violates the Constitution."   *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990).   It was also clearly established that making false statements in a probable cause affidavit is a violation of a person's Fourth Amendment rights.   *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999) ("[T]he Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen and, thus, . . . qualified immunity will not shield [a police officer] from liability for such false statements, if such false statements were necessary to the probable cause.").

   While first acknowledging these binding precedents, Vaughn then argues that the law was not clearly established because Plaintiff cannot point to any decision from the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court that would put Vaughn on notice that his arrest of Plaintiff "under the facts of this case" would be clearly unlawful.   Doc. No. 77, at 13, 22-23.   But to satisfy the "clearly established" prong, the decisional authority need not be directly

on point, or involve identical facts.   All that is required is that the law sufficiently renders the constitutional question "beyond debate."   *al-Kidd*, 563 U.S. at 741; *see also Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) ("For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law.").   And here, there can be no debate that if an officer lies about material facts in the probable cause affidavit, a constitutional violation has occurred.   *See Kelly v. Curtis*, 21 F.3d 1544, 1549 (11th Cir. 1994) ("[T]his Circuit has recognized a federal right to be free from 'prosecutions procured by false and misleading information.'" (quoting *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988))); *Jones*, 174 F.3d at 1285 (noting that this law has been clearly established since 1993).[9]

### B.   *Plaintiff's Constitutional or Statutory Rights Were Not Violated*

But Vaughn fares far better on the first prong of the qualified immunity test. To state a claim for false arrest under § 1983, a plaintiff must show that his warrantless arrest was made without probable cause.   *See Marx*, 905 F.2d at 1505 ("A warrantless arrest without probable cause violates the Constitution and forms

---

[9] It appears that Vaughn is confusing whether the law was clearly established in April 2019 that he had probable cause to arrest Plaintiff with whether the law was clearly established at that time that a law enforcement officer could not intentionally make false statements in an arrest affidavit.   But Plaintiff's claim only focuses on whether false statements were made in the probable cause affidavit.

the basis for a section 1983 claim."). "The existence of probable cause, however, is an absolute bar to a section 1983 action for false arrest." *Id.*, at 1505–06 (citations omitted); *see also Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest."). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime. Probable cause determinations traditionally have been guided by reviewing the totality of the circumstances." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992) (citations omitted). This "is not a high bar," *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019), and "requires only a probability . . . of criminal activity, not an actual showing of such activity, *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Marx*, 905 F.2d at 1506). The standard for probable cause is "the same under both Florida and federal law." *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998).

Even if probable cause were lacking, "[t]o be immune from § 1983 false-arrest and malicious-prosecution claims, an officer need only demonstrate that she acted with arguable probable cause. Arguable probable cause exists where reasonable

officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest [the] Plaintiff." *Brivik v. Law*, 545 F. App'x 804, 806 (11th Cir. 2013) (first citing *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997), then quoting *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)).   "Thus, [e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Migut v. Flynn*, 131 F. App'x 262, 264 (11th Cir. 2005) (internal quotation marks omitted) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).   "Whether an arresting officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the facts of the case."   *Reid v. Henry Cty. Ga.*, 568 F. App'x 745, 748 (11th Cir. 2014) (citing *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1333 (11th Cir. 2004)).

Plaintiff's false arrest claim is premised on his allegations that Vaughn made false statements in the probable cause affidavit, and that those statements were determinative of whether probable cause existed to arrest Plaintiff.   However, the undisputed material facts establish both that Vaughn had probable cause to arrest Plaintiff, and that no false statements were made in the probable cause affidavit. And even if any false statements were made, they did not impact the probable cause determination.

Vaughn arrested Plaintiff for violating two different state laws.   The first,

Resisting an Officer Without Violence, is codified in Florida Statute § 843.02, which

provides:

> Whoever shall resist, obstruct, or oppose any officer as defined in s.
> 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Florida Commission
> on Offender Review or any administrative aide or supervisor
> employed by the commission; county probation officer; parole and
> probation supervisor; personnel or representative of the Department
> of Law Enforcement; or other person legally authorized to execute
> process in the execution of legal process or in the lawful execution of
> any legal duty, without offering or doing violence to the person of the
> officer, shall be guilty of a misdemeanor of the first degree, punishable
> as provided in s. 775.082 or s. 775.083.

Fla. Stat. § 843.02.

A violation of § 843.02 is established when (1) "the officer was engaged in the

lawful execution of a legal duty"; and (2) "the defendant's action, by his words,

conduct, or a combination thereof, constituted obstruction or resistance of that

lawful duty." *Baxter v. Roberts*, 54 F.4th 1241, 1266 (11th Cir. 2022) (quoting *C.E.L.*

*v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009)).   *See also Davis v. Williams*, 451 F.3d

759, 764–65 (11th Cir. 2006).   Notably, under Florida law, "it is a crime not only to

oppose or to obstruct a law officer in the execution of the officer's duty, but also to

attempt to oppose or to obstruct the officer." *Post v. City of Fort Lauderdale*, 7 F.3d

1552, 1558–59 (11th Cir.1993).

Here, there is no question that Vaughn was engaged in the lawful execution

of a legal duty – it is undisputed that he was dispatched to investigate a potential

criminal offense following a call by the Roughtons, and that his interactions with Plaintiff were during an attempt to investigate the potential offenses.   *See Brown v. Haddock*, No. 5:10-CV-130/RS-GRJ, 2011 WL 1655580, at *4 (N.D. Fla. May 2, 2011) ("[T]here is no question that the deputies were in the process of investigating a police dispatch, and thus, they were engaged in the lawful execution of a legal duty."); *see also Triana v. Diaz*, No. 12-21309-CIV, 2014 WL 5319800, at *5 (S.D. Fla. Oct. 16, 2014) (officer was engaged in lawful execution of legal duty when he was dispatched to investigate a misdemeanor complaint of excessive noise); *Francis v. State*, 736 So. 2d 97, 99 n.1 (Fla. 4th Dist. Ct. App. 1999) (holding that an officer's investigation of a 911 call constitutes the lawful execution of a legal duty).   Plaintiff makes no argument to the contrary.   Therefore, the undersigned focuses on the second prong:   whether the undisputed material facts, taken in the light most favorable to Plaintiff, establish as a matter of law that Plaintiff obstructed or resisted Vaughn from exercising his lawful duties.   And upon review, the undersigned finds that the answer is yes.

As discussed above, Vaughn was responding to a call to law enforcement from the Roughtons concerning an altercation with Plaintiff – in other words he was investigating a potential criminal offense, including an alleged battery and criminal mischief, for which Plaintiff was the suspect.   Vaughn Depo., at 20-22, 32, 40-42, 50, 63, 68; Doc. No. 79-1, at 1; Doc. No. 79-2, at 3.   Vaughn spoke first with the

Roughtons and obtained their version of events, which included that Plaintiff had a verbal altercation with the Roughtons, and then rammed his bicycle into both the golf cart and into Mr. Roughton's leg.   *Id.*[10]   This was more than enough to create, at a minimum, reasonable suspicion to detain Plaintiff for the duration of the investigation, which Vaughn did.   *See Terry v. Ohio*, 392 U.S. 1 (1968) (when, under totality of the circumstances analysis reasonable suspicion exists that criminal activity was afoot, an investigative stop of a possible suspect is lawful); *McIntyre v. Sheriff, Seminole Cty. Sheriff's Off.*, No. 6:13-cv-251-Orl-41KRS, 2014 WL 5419996, at *4 (M.D. Fla. Oct. 23, 2014) (same); *State v. Davis*, 849 So. 2d 398, 400 (Fla. 4th Dist. Ct. App. 2003) (a "police officer may . . . stop a person for the purpose of investigating possible criminal behavior, even though there is no probable cause for an arrest, as long as the officer has reasonable suspicion that the person is engaged in criminal activity").

During this detention, Plaintiff continued to be uncooperative, refused to walk to Vaughn's patrol car, refused to answer Vaughn's questions, and Plaintiff resisted both verbally and physically to Vaughn's search of Plaintiff and subsequent handcuffing.   Taking these facts in the light most favorable to Plaintiff, the undersigned finds that these actions clearly establish probable cause for Plaintiff's

---

[10] Plaintiff admits that he engaged in a verbal altercation and also admits that he rammed his bicycle into the Roughton's golf cart.   Dempsey Depo., at 34-35

arrest under Fla. Stat. § 843.02, and that these undisputed facts also clearly support the statements Vaughn made in his probable cause affidavit.   *See Baxter*, 54 F.4th at 1266–67 (finding second element of a violation of Fla. Stat. § 843.02 satisfied where arrestee refused to comply with deputy's lawful order to get out of the vehicle, repeatedly disputed the deputy's authority, and then physically resisted by pulling his keys away from the deputy); *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 909-10 (11th Cir. 2006) (officer had probable cause to arrest plaintiff for violation of § 843.02 where plaintiff obstructed officer's effort to conduct investigation and interrupted him after plaintiff had been instructed to return to her vehicle); *Alcius v. Grontenhuis*, No. 22-60386-CIV, 2023 WL 3340931, at *12–13 (S.D. Fla. May 10, 2023) (police officer had probable cause to arrest plaintiff for violations of Fla. Stat. § 843.02 where officer was investigating plaintiff, and while officer was conducting a pat down search, plaintiff verbally protested his arrest and pulled away – the verbal and physical resistance to the pat down gave the officer probable cause for the arrest); *McIntyre*, 2014 WL 5419996, at *6-7 (granting summary judgment on state law and § 1983 false arrest claims where probable cause existed to arrest plaintiff for resisting an officer without violence when plaintiff walked away, ignored the officer's orders, and pulled away from the officer); *Arquette v. Eslinger*, No. 6:08-cv-1836-Orl-35DAB, 2010 WL 11623669, at *10 (M.D. Fla. Feb. 10, 2010) (granting summary judgment in favor of police officer on false arrest claim where

undisputed facts established probable cause to arrest plaintiff for violations of Fla. Stat. § 843.02 where Plaintiff was subject of investigation, and attempted to snatch her license back from officer); *Francis v. State*, 736 So. 2d 97, 98-99 (Fla. 4th Dist. Ct. App. 1999) (affirming resisting without violence conviction of woman who blocked an officer's path and told him, "It's okay; we don't need you," when the officer was investigating pursuant to a 911 call).

Plaintiff's submitted evidence does not change the undersigned's conclusion. Plaintiff does not dispute these facts in his deposition testimony, specifically his refusal to obey lawful commands and his resisting during his search and handcuffing.   Doc. No. 81.   His affidavit also does not contradict these facts; instead Plaintiff avers that because he was not located specifically at 731 Barefoot Boulevard at the time of Vaughn's investigation and arrest of Plaintiff, none of Vaughn's other statements could possibly be true and therefore probable cause did not exist for Plaintiff's arrest.   Doc. No. 83.   But Vaughn never stated that the incident in question or Plaintiff's arrest occurred at that precise address, rather he was merely dispatched to that address.   Doc. No. 79-1, at 1.   *See also* Doc. No. 79-2, at 3 (Vaughn's case report where he states that he was dispatched to the "area" of 731 Barefoot Blvd., and that at the time he went to speak with Plaintiff, he was standing in the driveway of the address adjacent to where this incident occurred). Thus, to the extent Plaintiff contends Vaughn made a false statement on this point,

there is none.   And even if there were, the precise address of where Plaintiff was located at the time of his arrest is not material to the question of whether Vaughn had probable cause to arrest Plaintiff for a violation of Fla. Stat. § 843.02, and Plaintiff provides no explanation or legal authority to the contrary.   *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (a warrant is unconstitutional if the false statements are necessary to a finding of probable cause; if the allegedly false material is set aside and sufficient content remains in the affidavit to support a finding of probable cause, then the warrant is valid); *Gill v. Judd*, No. 8:15-cv-840-MSS-AEP, 2016 WL 10676096, at *6 (M.D. Fla. Mar. 23, 2016), *order clarified*, 2016 WL 10675898 (M.D. Fla. June 21, 2016), *and aff'd sub nom. Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504 (11th Cir. 2019) ("[F]alse statements or material omissions in an arrest affidavit do not defeat an officer's claim of qualified immunity if the remaining unchallenged facts are sufficient to demonstrate probable cause." (citing *Rhodes v. Kollar*, 503 F. App'x 916, 923 (11th Cir. 2013))); *see also Newcome v. Hernando Cty. Sheriff's Off.*, No. 8:21-cv-2171-TPB-TGW, 2022 WL 17608783, at *6 (M.D. Fla. Dec. 13, 2022) (dismissing claim for false arrest or imprisonment where the allegedly false statements identified by the plaintiff were not material and removal of those statements would not negate probable cause for arrest); *Zozula v. Florida*, No. 6:10-cv-1588-Orl-28GJK, 2011 WL 2531203, at *3-4 (M.D. Fla. June 24, 2011) (dismissing

with prejudice false arrest claims where officer did not make any misstatements or omissions that would negate probable cause for the arrest).

The affidavit from Mr. Hinkson is also insufficient to defeat summary judgment. Taking every word of Mr. Hinkson's affidavit as true and without making credibility determinations, as the undersigned must at the summary judgment stage, Mr. Hinkson's averments do not create a genuine factual dispute. To the contrary, Mr. Hinkson clearly states that he did not see Vaughn, the Roughtons, or Plaintiff together, and Mr. Hinkson nowhere explains how he possessed any personal knowledge of Plaintiff's arrest such that it would support Mr. Hinkson's statements challenging the veracity of Vaughn's probable cause affidavit. *See* Doc. No. 84 ("I never saw the deputy, Mr. Dempsey or the other people together."). Moreover, Mr. Hinkson's conclusory averment that "[t]he deputy is not truthfull [sic]" and that Plaintiff never refused to obey Vaughn's lawful order to move away from the Roughtons – again without any explanation to support how Mr. Hinkson could make such broad statements – cannot outweigh the detailed recitations in Vaughn's probable cause affidavit. *See, e.g.*, *Williamson v. Alabama Dep't of Mental Health & Mental Retardation*, No. 21-13274, 2023 WL 5287873, at *1 (11th Cir. Aug. 17, 2023) ("'[M]ere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand' summary

judgment." (quoting *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005))); *West v. Higgins*, 346 F. App'x 423, 425 (11th Cir. 2009) ("Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion."); *Childs v. Dekalb Cty., Ga.*, 286 F. App'x 687, 691 (11th Cir. 2008)   ("[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact." (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278-29 (11th Cir. 2002))).

With respect to Mr. Curtis' affidavit, while it clear from its face that it is based on personal knowledge (he was talking to Plaintiff while they were both standing in Mr. Curtis' driveway), the affidavit is notably silent about what happened between Vaughn and Plaintiff at the patrol car.   Specifically, Mr. Curtis does not speak on whether Plaintiff resisted Vaughn at the time he was searched and handcuffed – Mr. Curtis merely avers that he saw Vaughn handcuff Plaintiff and take him away in the patrol car.   Doc. No. 85, ¶¶ 6-8.   Mr. Curtis' general statement that Plaintiff was polite to Vaughn and "never resisted arrest" is insufficient.   *Id.*, ¶ 12.   *See Williamson*, 2023 WL 5287873, at *1; *Childs*, 286 F. App'x at 691.   Thus, Mr. Curtis' affidavit – taken as true – does not support a finding that Vaughn made any false statements in his probable cause affidavit and does not create a material issue of fact sufficient to defeat summary judgment.

Plaintiff's other arguments in his opposition brief are also not persuasive. First, as discussed above, whether the arrest and/or investigation of Plaintiff took place specifically at 731 Barefoot Boulevard or some adjacent location is not material to a finding of probable cause, and therefore insufficient to establish a claim for false arrest. *See* Doc. No. 82, at 4-6, 9-10. *See also Madiwale*, 117 F.3d at 1326; *Gill*, 2016 WL 10676096, at *6; *Newcome*, 2022 WL 17608783, at *6; *Zozula*, 2011 WL 2531203, at *3-4. Second, Plaintiff spends a substantial amount of his opposition brief arguing about the legality of the Roughtons' use of the pedway to drive their golf cart. Doc. No. 82, at 6-8. However, Plaintiff nowhere explains how the Roughtons' use of their golf cart relates to whether Vaughn had probable cause to arrest Plaintiff for resisting arrest, where the Roughtons drove the golf cart is not mentioned in the probable cause affidavit, *see* Doc. No. 79-1, and the undisputed material facts make clear that Vaughn never observed the altercation between Plaintiff and the Roughtons.

Third, Plaintiff takes issue with Vaughn's use of the phrases in his probable cause affidavit that "contact was made" with Plaintiff, and that Vaughn "attempted to separate the parties." Doc. No. 82, at 11-12. While not entire clear, it appears that Plaintiff is arguing that the phrase "contact was made" must mean physical contact, and that separating the parties must mean that the parties (the Roughtons and Plaintiff) were standing right next to each other at the time of Vaughn's arrival.

*Id.*   Plaintiff provides no legal authority to support such a narrow interpretation of these phrases, nor does Vaughn's probable cause affidavit support such an interpretation.   Doc. No. 79-1.   And even if Plaintiff were correct, the inclusion of these phrases does not vitiate the existence of probable cause to arrest Plaintiff for resisting arrest.   Whether Vaughn physically touched Plaintiff or the Roughtons, and where exactly Plaintiff and the Roughtons were located at the time Vaughn arrived, has no material bearing on whether Plaintiff refused to cooperate with Vaughn's investigation and/or resisted both verbally and physically to his arrest. *See Madiwale*, 117 F.3d at 1326; *Gill*, 2016 WL 10676096, at *6; *Newcome*, 2022 WL 17608783, at *6; *Zozula*, 2011 WL 2531203, at *3-4.

Plaintiff's fourth argument does not appear to challenge any of Vaughn's statements in his probable cause affidavit.   Instead, Plaintiff appears to admit that he refused Vaughn's requests to walk over to him to discuss the altercation with the Roughtons.   Doc. No. 82, at 13.   *See also id.*, at 16 ("DEMPSEY had the right to remaining by the Curtisses on their land and not go to the deputy when he called from 50ft down their driveway on the pedway to come to him so he could investigate.").   Nevertheless, Plaintiff contends that his mere refusal is insufficient to establish probable cause for a violation of Fla. Stat. § 843.02.   *Id.* at 13 (citing *Davis*, 451 F.3d 759).

However, Florida law has made clear that a violation of § 843.02 can occur by a person's words, conduct, or combination thereof. *See Baxter,* 54 F.4th at 1266; *C.E.L.*, 24 So. 3d at 1185–86; *McGee v. Barnard*, No. 3:15CV168/MCR/CJK, 2017 WL 3687348, at *4 (N.D. Fla. Aug. 22, 2017) (finding probable cause to support arrest for violation of Fla. Stat. § 843.02 where plaintiff repeatedly screamed and berated officer, interrupted officer, refused repeated requests to calm down, and prevented officer from obtaining answers or asking basic questions, thereby interfering with a lawful investigation); *Francis v. State*, 736 So. 2d 97, 99 n.2 (Fla. Dist. Ct. App. 1999) ("Words alone may result in obstruction of justice where the officer in question is 1) serving process; 2) legally detaining a person; or 3) asking for assistance.").   And here, Plaintiff's words – his argumentative responses to Vaughn's lawful questions and commands – thwarted Vaughn's ability to perform his official duties and therefore are sufficient to establish a violation of Fla. Stat. § 843.01.   *See Thompson v. Mostert*, No. 6:10-cv-979-Orl-35GJK, 2012 WL 12950511, at *4 (M.D. Fla. Jan. 27, 2012), *aff'd*, 489 F. App'x 396 (11th Cir. 2012) ("Although mere words can violate this statute when an officer is engaged in an investigation, the words must actually thwart an officer form performing his official duties.").   Moreover, as discussed in detail above, Plaintiff engaged in physical conduct when he repeatedly refused to accompany Vaughn to his patrol car and when he pushed against Vaughn while he was being handcuffed.   Thus, this argument also fails.

Last, Plaintiff appears to argue that Vaughn lacked probable cause for his arrest because the charges were ultimately *nolle prossed*.   Doc. No. 82, at 6.   But whether Plaintiff was ultimately prosecuted and/or convicted of the offense is not determinative of whether there was probable cause to support the arrest itself.   *See Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002) ("Knight was never convicted or even prosecuted for that crime or any other stemming from the arrest, but that does not matter.   When Knight was arrested . . . there was probable cause to believe he had committed the crime of misdemeanor assault." (citations omitted)); *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest."); *Jackson v. Capraun*, No. 6:09-cv-1737-Orl-28DAB, 2011 WL 2516179, at *5 (M.D. Fla. June 17, 2011), *aff'd*, 534 F. App'x 854 (11th Cir. 2013) ("[T]he fact that a criminal defendant is later acquitted or released does not by itself mean that probable cause was initially lacking." (citing *Marx,* 905 F.2d at 1507)); *Stachel v. City of Cape Canaveral,* 51 F. Supp. 2d 1326, 1331 (M.D. Fla. 1999) ("The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead we focus on the validity of the arrest.   If there is probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails." (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995))).   *See also Howell v. Tanner*, 650 F.2d 610, 615 (5th Cir. 1981), *disapproved of on other grounds*

by *Augustine v. Doe*, 740 F.2d 322 (5th Cir. 1984) ("Once probable cause has been established, the legality of the arrest is not affected by . . . a subsequent dismissal or acquittal of the charges.").[11]

For these reasons, taking the undisputed facts in the light most favorable to Plaintiff, the undersigned finds that Vaughn had probable cause to arrest Plaintiff for a violation of Fla. Stat. § 843.02.  The undersigned further finds that Vaughn did not make any false statements in his probable cause affidavit and, to the extent that any statements were not accurate, they did not negate the existence of probable cause for Plaintiff's arrest.

Because the undersigned finds that probable cause existed as to Plaintiff's arrest under Fla. Stat. § 843.02, the undersigned also finds that Plaintiff's false arrest claim fails.   *See Elmore v. Fulton Cty. Sch. Dist.*, 605 F. App'x 906, 914 (11th Cir. 2015) ("So long as the circumstances known to the officers, viewed objectively, give probable cause to arrest for any crime, the arrest is constitutionally valid even if probable cause was lacking as to some offenses, or even all announced charges.");

---

[11] Plaintiff has cited two additional cases, neither of which are persuasive.   Doc. No. 82, at 16-17.   The first, *Alvarez-Mena v. Miami-Dade County*, 305 So. 3d 63 (Fla. 3d Dist. Ct. App. 2019), Plaintiff cites for the general proposition that summary judgment cannot be granted on a state tort claim for false arrest where materials facts relating to the existence of probable cause remain in dispute.   However, as discussed in detail above, no such factual disputes exist here.   Plaintiff appears to cite the second, *Anderson v. Ivey*, No. 6:19-cv-2014-JA-GJK, 2021 WL 825565, at *4 (M.D. Fla. Mar. 4, 2021), for the same general proposition.   Moreover, the facts of *Anderson* vary greatly from the present case, and included dashcam video that contradicted the officer's version of events.

*Paez*, 915 F.3d at 1285-86 (holding that probable cause, or arguable probable cause, as to any one offense is sufficient to defeat § 1983 claims for other Fourth Amendment violations, including false arrest and unlawful searches); *Smart v. City of Miami*, 107 F. Supp. 3d 1271, 1282 (S.D. Fla. 2015) ("There is no requirement that the police establish probable cause to arrest for the specific charge announced at the time of the arrest, or for the charge cited in the arrest report.   All that is required is probable cause to arrest for *any* criminal offense."); *Triana*, 2014 WL 5319800, at *4-5 (granting summary judgment in favor of officer on false arrest claim where plaintiff was arrested on misdemeanor charges of violating excessive noise ordinance and resisting arrest without violence; while there was no probable cause for the noise ordinance arrest, there was probable cause to support the resisting arrest charge, therefore the false arrest claim failed); *Jeanty v. City of Miami*, 876 F. Supp. 2d 1334, 1342-44 (S.D. Fla. 2012) (finding that false arrest claim failed as a matter of law where there was probable cause to arrest for a traffic violation, notwithstanding fact that traffic violation was not the stated reason for the arrest). Accordingly, the undersigned will respectfully recommend that summary judgment be granted in favor of Defendant Vaughn and against Plaintiff as to his last remaining claim for false arrest.[12]

---

[12]   Because the undersigned finds probable cause to support Plaintiff's arrest under Fla. Stat. § 843.02, and in light of the legal precedent cited above, the undersigned does not address in this report and recommendation whether probable cause existed to arrest

## V.   RECOMMENDATION

For the reasons set forth above, the undersigned **RESPECTFULLY RECOMMENDS** that the Court **GRANT** the Motion for Final Summary Judgment by Defendant John Vaughn (Doc. No. 77) in its entirety.   The undersigned further recommends that the Court enter judgment in favor of Defendant and against Plaintiff accordingly, terminate any other pending matters, and close the file.

## NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.   Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.

---

Plaintiff for a violation of Fla. Stat. § 856.011.   The undersigned notes, however, that with respect to the § 856.011 arrest, material issues of fact may exist.   *Compare* Doc. Nos. 84-85 (affidavits of Mr. Hinkson and Mr. Curtis averring that Plaintiff was not drinking and was not intoxicated), *with* Vaughn Depo., at 54 (testifying that Plaintiff appeared intoxicated and had an odor of alcohol) and Doc. No. 79-1 and 79-2 (probable cause affidavit and case report both noting that Plaintiff had a strong odor of an alcoholic beverage, his words were slurred, and he did not appear to be in control of his faculties).   *See also Jernigan v. State*, 566 So. 2d 39, 40 (Fla. 1st Dist. Ct. App. 1990) ("To sustain a conviction for disorderly intoxication as described in section 856.011(1), Florida Statutes, the state must prove not only that a person is intoxicated but that the public safety is endangered.").   If the Court disagrees with the undersigned's findings as to Plaintiff's arrest under § 843.02, the undersigned respectfully recommends that the Court remand the matter to the undersigned for further analysis.

Recommended in Orlando, Florida on October 3, 2023.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy